PEOPLE ex rel. DUNPHY et al. v. WIGGINS, Town Supervisor.

(Supreme Court, Appellate Division, Third Department. March 8, 1911.)

1. DRAINS (§ 18*)—CONSTRUCTION—BONDS.

Under Drainage Law (Consol. Laws, c. 15) §§ 15, 16, authorizing drainage commissioners to borrow funds to construct ditches or to pay land damages, and requiring the supervisor of the town to issue bonds to the amount borrowed, the amount borrowed may not include items for compensation and personal expenses of the commissioners.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 11–13; Dec. Dig. § 18.*]

2. MANDAMUS (§ 103*) — DISCRETIONARY POWER — ISSUANCE OF DRAINAGE BONDS.

Under Drainage Law (Consol. Laws, c. 15) § 37, requiring the drainage commissioners to make and file a detailed statement of moneys received and disbursed, and providing that on a specified notice the account may be audited, mandamus will not lie to compel the issuance of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any bonds, except in payment of expenses legally audited and found proper.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 220–222; Dec. Dig. § 103.*]

Appeal from St. Lawrence County Court.

Mandamus by the People, on the relation of John Dunphy and others, against Abram H. Wiggins, as Supervisor of the Town of Canton, to compel the issuance of bonds of the town under Drainage Law (Laws 1869, c. 888) § 8, as amended by Laws 1906, c. 115. From an order granting a writ of peremptory mandamus, defendant appeals. Reversed, and motion for writ denied.

See, also, 137 App. Div. 935, 121 N. Y. Supp. 1143.

Argued before SMITH, P. J., and SEWELL, HOUGHTON, and BETTS, JJ.

Vasco P. Abbott, for appellant.
John R. Keeler, for respondents.

SMITH, P. J. These proceedings were started in October, 1906. The law as it then existed, as far as the same affects this proceeding, is the same as the drainage law appearing in the Consolidated Laws as chapter 20 of the Laws of 1909. For convenience, therefore, in this discussion, references will be made to the sections of the general drainage law of 1909.

That this drainage law is constitutional was held in Matter of Ryers et al., 72 N. Y. 1, 28 Am. Rep. 88, and Matter of Tuthill, 163 N. Y. 133, 141, 142, 57 N. E. 303, 49 L. R. A. 781, 79 Am. St. Rep. 574. By section 15 of this law it is provided that, where it shall be necessary to raise funds "for the construction of said ditches or land damages" before the assessment thereinafter provided for can be made and collected, the commissioners were empowered, with the approval of the court, to borrow money and to issue evidences of indebtedness therefor; and the said commissioners were required to certify the amount to be borrowed to the supervisor of the town in which the lands to be assessed were located. By section 16 it is then provided that the supervisor of such town shall issue the bonds of the town to the amount named in the statement, and shall sell the same and deliver the proceeds to the treasurer of such commission. These commissioners had borrowed money upon their notes, with the approval of the court given under section 15, and upon the refusal of the supervisor of the town to issue bonds therefor have procured the order of the court for a writ of mandamus for their issuance. From this order this appeal is taken. The order should be reversed for two reasons:

First. At the time that the commissioners sought the approval of the court for the execution of the last note included in the $4,000 of their evidences of indebtedness, they presented to the County Court an account showing the items of the amount for which they asked to issue certificates of indebtedness. In this account it appears are included items for the compensation and personal expenses of these com-

missioners. In my judgment it was not intended that temporary evidences of indebtedness under section 15 of the statute should be issued for such a purpose. It is elsewhere in the statute provided that land damages must be paid before the land is taken, and the cost of construction must necessarily be advanced by some one. Those items of disbursements, therefore, were provided for by providing for temporary advancements. It would be a very liberal interpretation of the words of the statute to include the compensation of the commissioners and their personal expenses in the words of section 15, "funds for construction of said ditches or channels or land damages." There is specific provision in the statute for the recovery of this compensation and these personal expenses at the termination of the proceeding, where it is provided explicitly for their audit and payment. Because, therefore, these items are included in the amount for which bonds are sought to be issued, the supervisor properly refused the request of the commissioners to issue the same.

Second. By section 37 of the drainage law it is provided that the commissioners as soon as practicable, "or whenever thereto ordered by the court," shall make and file a detailed statement of moneys received by them and moneys disbursed. It is further provided that upon notice given to all parties, as provided in section 10 of the statute, this account may be audited. When these bonds are once issued, they must be paid by the town. If upon the final audit certain of these disbursements should be disallowed, the only mode of reimbursement to the town would be a suit by the town to recover back from these commissioners to that extent the moneys paid to them from the sale of these bonds. The property benefited cannot legally be assessed for such expenditures. If the commissioners should happen to be insolvent, the loss must fall upon the town itself, which has not in any way been made a party to the proceeding or lawfully charged with any of the cost of the improvement. Under such conditions, even if legally authorized, the discretionary power of mandamus should not be exercised to compel the issuance of any bonds, except in payment of expenses which have been legally audited and found proper under section 37 of the act. The final order should, therefore, be reversed as matter of law and of discretion, with costs, and motion for writ of mandamus denied, without costs.

Final order reversed as matter of law and as matter of discretion, with costs, and motion for writ of mandamus denied, without costs. All concur.